**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**


COACHMEN INDUSTRIES, INC.,
and GEORGIE BOY
MANUFACTURING, LLC,

       Plaintiffs,

v.                        CASE NO.  3:06-cv-959-J-HTS

ROYAL SURPLUS LINES
INSURANCE COMPANY,

       Defendant.

_____

<u>**O R D E R**</u>

**I. Status and Background**

Before the Court is Plaintiffs' Motion to Amend Complaint
(Doc. #20; Motion).  Defendant opposes the Motion in part.  *See*
Royal's Response to Plaintiffs' Motion for Leave to Amend to Add
Claims for Abuse of Process and Violation of § 624.255 (Doc. #23;
Response).

Through the six-count Complaint (Doc. #2; Complaint),
originally filed in Florida state court, Plaintiffs allege
malicious prosecution, breach of contract, breach of fiduciary

duty/common law bad faith, breach of the covenant of good faith and fair dealing, fraud in the inducement, and negligent misrepresentation. Relying on federal diversity jurisdiction, Royal Surplus Lines Insurance Company (Royal) removed this case to the United States District Court for the Middle District of Florida and advanced various defenses to the Complaint, invoking the protection of doctrines including res judicata and judicial estoppel. *See* Defendant's, Royal Surplus Lines Insurance Company, Amended Answer and Affirmative Defenses (Doc. #9) at 7-8. Now, Coachmen Industries, Inc. (Coachmen), and Georgie Boy Manufacturing, LLC (GBM), assert that, "[d]ue to the previous litigation between the parties over related matters[1] and in the interests of judicial efficiency, [they] wish to amend [their] Complaint in order to narrow the issues[.]" Motion at [externally numbered] 1. Coachmen and GBM's "proposed Amended Complaint only lists three causes of action[:] malicious prosecution, abuse of process, and statutory bad faith." *Id.* at [externally numbered] 2.

The present case represents merely the latest round of litigation originally sparked by a fatal March 4, 1996, incident.[2] On that date, Joyce and Earl Haan, a married couple, were traveling on Interstate 95 in Jacksonville, Florida, in their 1978 Swinger

---

[1]     Royal's Request for Judicial Notice (Doc. #4; Request), asking the Court "to take notice of its own records in case number 3:01-CV-00301-HTS," Request at 1, and to which no opposition has been filed, is **GRANTED**.

[2]     The details narrated herein were gleaned from documents on file in case 3:01-cv-301-J-HTS.

motor home when a strap securing the gas tank failed.  Upon falling to the pavement, the tank was punctured, and the fuel it contained ignited.  An explosion and subsequent fire in the motor home killed Mr. Haan and severely injured Mrs. Haan.

On July 9, 1997, Joyce Haan, individually and on behalf of her husband's estate, sued Coachmen and the Chrysler Corporation in state court.  Thereafter, GBM and another entity were added as defendants.  Mrs. Haan alleged a defect in the motor home brought about the catastrophe and averred Coachmen, GBM, and others had acted negligently.  It was also asserted the defendants were strictly liable.

Coachmen's primary policy with one of its insurers, Royal, gave Coachmen the ability to control the defense of any action portending financial consequences encompassed by a self-insured retention (SIR) amount.  The contract afforded Royal the right to assume the defense in any action that could exceed the SIR figure. Prior to Mrs. Haan filing the lawsuit, Coachmen and GBM investigated the incident, and once the suit was initiated, Coachmen took over the defense.  However, Royal ultimately stepped in and, on April 16, 1999, settled the case for an amount greater than was previously offered following a 1998 mediation proceeding. Before effectuating the settlement, Royal did not deny coverage, assert a defense to coverage, or reserve its rights.

In March 2000, another insurer affected by the matter sued Royal for contribution, indemnity, and subrogation.[3]  That action settled.  Then, in March 2001, Royal brought suit against its own insureds, claiming Coachmen failed in the Haan suit to conduct a good faith defense.  It was also alleged Coachmen's failure to keep Royal adequately informed led to missed opportunities to settle the dispute for less than Royal eventually agreed to pay, and that all defendants failed to keep Royal closely advised of the case despite Royal's request that they do so.  The defendants counterclaimed for abuse of process, common law bad faith/breach of fiduciary duty, breach of contract, and breach of the covenant of good faith and fair dealing.  The pleadings underwent amendment, but in the end the entire action was disposed of[4] prior to trial with neither side experiencing success, at least from an offensive standpoint.

## II. Discussion

Unsurprisingly, Defendant is agreeable "to Coachmen[5] abandoning" the counts omitted from the proposed amended complaint (Proposed Complaint), their sudden resurrection having no doubt occasioned a frightful episode of déjà vu.  Response at 1

---

[3]     See case 3:00-cv-251-J-25HTS.

[4]     Actually, a complete recapitulation would not ignore that a third-party complaint was filed, a part of the case that was severed from the main action and stayed by the assigned district judge. Recently, the stay was lifted and the third-party complaint dismissed in view of the outcome of the main action.

[5]     Royal refers to both Plaintiffs, collectively, as Coachmen. *See* Response at 1.

(capitalization omitted).   However, "Royal objects to Coachmen adding claims for abuse of process and 'statutory bad faith.'" *Id.* at 2 (capitalization omitted).[6]   It portrays both claims as frivolous, previously litigated, *id.*, foreclosed by their prior status as compulsory counterclaims, *see id.* at 5-6, and barred by the doctrines of laches and waiver, as well as Florida's statute of limitations.  *See id.* at 11-13.

### A.   Legal Standard

The standard for amendments at this stage of the proceedings is set forth in Rule 15(a), Federal Rules of Civil Procedure (Rule(s)).[7]   In determining whether to grant or deny a motion to amend under Rule 15, a court may consider "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. . . . ." *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also Garfield v. NDC Health Corp.,* 466 F.3d 1255, 1270 (11th Cir. 2006) (quoting *Foman*); *Spanish Broad. Sys. of Fla., Inc. v. Clear Channel Commc'ns, Inc.*, 376 F.3d 1065, 1077 (11th

---

[6]     Whereas Plaintiffs state "[t]he only claim that is different between the original Complaint and the Amended Complaint is the statutory bad faith claim[,]" Motion at [externally numbered] 3 (capitalization omitted), the proposed count for abuse of process is also new to the present litigation.

[7]     The Case Management and Scheduling Order (Doc. #24), entered subsequent to the Motion's submission, established a prospective deadline for seeking amendment of pleadings.  *Cf. Perez v. Pavex Corp.*, No. 801CV0069T27MSS, 2002 WL 31500404, at *1 (M.D. Fla. Oct. 18, 2002) (Rule 15(a) standard applies unless deadline has passed).

Cir. 2004) (same).    Many of Defendant's arguments can be characterized as targeting the futility of permitting amendment.[8] *See, e.g., Hatchett v. United States*, 330 F.3d 875, 885 (6th Cir. 2003) (res judicata and laches); *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 112-13 (3d Cir. 2002) (frivolity); *Moore v. Baker*, 989 F.2d 1129, 1131 (11th Cir. 1993) (statute of limitations).

## B.  Abuse of Process

As to the proposed count for abuse of process, Royal perceives frivolity in that it "fail[s] to allege new facts beyond those which this Court has already determined, in the first suit, do not state a cause of action[.]"    Response at 2 (capitalization omitted).    Additionally, it is contended the "abuse of process

---

[8]      To the extent a futility argument could be considered, "essentially, a motion to dismiss pursuant to Rule 12(b)(6)[,]" *In re Everfresh Beverages, Inc.*, 238 B.R. 558, 570 (Bankr. S.D.N.Y. 1999), that is potentially subject "to conver[sion] into a summary judgment motion[,]" *id.* at 570 n.9, it is observed a "court may take judicial notice of [public records] without converting a motion to dismiss into a motion for summary judgment." *Universal Express, Inc. v. U.S. SEC*, 177 F. App'x 52, 53 (11th Cir. 2006) (per curiam); *see also Wittich v. Wittich*, No. 06-CV-1635 (JFB)(WDW), 2006 WL 3437407, at *2 n.2 (E.D.N.Y. Nov. 29, 2006) ("[J]udicial notice of the relevant pleadings, orders and judgments in the prior action" may be taken "when reviewing a motion to dismiss under the doctrines of *res judicata* or collateral estoppel" without converting it into a motion for summary judgment.) (internal quotation marks omitted); *Martin K. Eby Constr. Co. v. Jacobs Civil, Inc.*, No. 3:05-cv-394-J-32TEM, 2006 WL 1881359, at *1 (M.D. Fla. July 6, 2006); 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (3d ed. 2004) ("Numerous cases . . . have allowed consideration of matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record," etc., "without converting the motion [to dismiss] into one for summary judgment."). *But cf. Trustmark Ins. Co. v. ESLU, Inc.*, 299 F.3d 1265, 1268-69 (11th Cir. 2002); *Jerkins v. IRS*, Civ. A. No. 95-0512-CB-C, 1995 WL 861009, at *1 n.1 (S.D. Ala. Oct. 30, 1995).
         The Court does not mean to imply agreement with the position a response to a motion to amend must be equated with a motion to dismiss. Despite sharing the Rule 12(b)(6) standard, a motion to dismiss concerns claims already pending whereas opposition to a motion for leave to amend discourages the granting of permission to add new allegations.   Opinions aligning the two situations procedurally are indeed scarce.

claim was . . . previously litigated in the first suit, during which Coachmen abandoned the . . . claim by failing to amend same within the allotted time frame after this Court dismissed the claim." *Id.* (capitalization omitted). Equity too, Royal suggests, weighs against permitting the count, since Coachmen has delayed in reasserting its allegations. *See id.* at 12. Finally, "Florida's statute of limitations for intentional torts such as abuse of process is four years[ and thus the deadline ran] by, at the latest, on or about March 15, 2005." *Id.* at 12-13 (emphasis and capitalization omitted).

In the prior suit, the original counterclaim filed by Coachmen, GBM, and others alleged abuse of process via its first count. *See* Coachmen Industries, Inc., Georgie Boy Manufacturing, Georgie Boy Projects, Inc. and GAB Robins North America, Inc. f/k/a GAB Business Services, Inc.'s Counterclaim (Doc. #45; Initial Counterclaim), filed in case 3:01-cv-301-J-HTS, at 5-6. Reasoning the defendants therein had neglected "to assert how the process was used illegally[, used] improperly" or otherwise misused, Report and Recommendation (Doc. #283; R & R), entered in case 3:01-cv-301-J-HTS, at 8, the Court determined the Initial Counterclaim "failed to state a claim for abuse of process." R & R at 7; *see also* Order (Doc. #358; Order Adopting), entered in case 3:01-cv-301-J-HTS, at 2 (adopting R & R). An opportunity to remedy the claim was provided, Order Adopting at 2 (allowing eleven days for amendment),

but the amended counterclaim ultimately filed contained no abuse of process count. *See* Coachmen Industries, Inc. and Georgie Boy Manufacturing's Amended Counterclaim (Doc. #360; Amended Counterclaim), filed in case 3:01-cv-301-J-HTS.

## 1.    Res Judicata (Claim Preclusion)[9]

Defendant begins its res judicata argument by declaring that, "[w]hen determining whether claim preclusion is appropriate, federal courts employ the law of the state in which they sit." Response at 6 (citing *NAACP v. Hunt*, 891 F.2d 1555, 1560 (11th Cir. 1990)). The end result may not vary depending on the body of law applied, but the Court disagrees with the proposition Florida law must be consulted in this instance.

In *Hunt*, the Eleventh Circuit did blanketly assert "[f]ederal courts apply the law of the state in which they sit with respect to the doctrine of *res judicata*." 891 F.2d at 1560. The opinion cited only *McDonald v. Hillsborough County Sch. Bd.*, 821 F.2d 1563 (11th Cir. 1987) as support for the supposed rule. *McDonald*, though, was addressed to the effect of a prior state court judgment. *See* 821 F.2d at 1565. Consequently, and in part due to a contrary line of Eleventh Circuit precedent that had never been directly overruled, some district courts resisted literal

---

[9]    Traditionally, res judicata has been "used to describe two discrete effects: (1) what we now call claim preclusion . . . and (2) issue preclusion, long called 'collateral estoppel[.]'" *Baker v. Gen. Motors Corp.*, 522 U.S. 222, 233 n.5 (1998). Because Royal raises "collateral estoppel" as a separate argument, the Court will refer to res judicata only in its claim preclusive sense.

acceptance of the formulation offered by *Hunt* and its progeny. *See, e.g., Jones v. New England Life Ins. Co.*, 974 F. Supp. 1476, 1479-80 (M.D. Ga. 1996).  The confused state of affairs was recognized, albeit not resolved, in *Pleming v. Universal-Rundle Corp.*, 142 F.3d 1354, 1356 n.1 (11th Cir. 1998).  Then, in 2003, the court of appeals reaffirmed the vigor of pre-*Hunt* authority and held unequivocally "that federal preclusion principles apply to prior federal decisions, whether previously decided in diversity or federal question jurisdiction."  *CSX Transp., Inc. v. Bhd. of Maint. of Way Employees*, 327 F.3d 1309, 1316 (11th Cir. 2003); *see also Schafler v. Indian Spring Maint. Ass'n*, 139 F. App'x 147, 150 (11th Cir. 2005) (per curiam); *Martin K. Eby Constr. Co. v. Jacobs Civil, Inc.*, No. 3:05-cv-394-J-32TEM, 2006 WL 1881359, at *9 n.15 (M.D. Fla. July 6, 2006) (relying on *CSX Transp.* and *Schafler*). Thus, the Court will directly apply federal claim preclusion law to determine the effect of the prior federal litigation on the present case.

"The doctrine of *res judicata* bars the filing of claims that were raised or could have been raised in an earlier proceeding." *Tuscano v. Evening Journal Ass'n*, 179 F. App'x 621, 625 (11th Cir. 2006) (per curiam); *see also Fumbah v. U.S. Attorney Gen.*, 205 F. App'x 808, 809 (11th Cir. 2006) (per curiam); *Williams v. Fla. Health Scis. Ctr., Inc.*, No. 8:05-CV-68-T-23EAJ, 2007 WL 641328, at *4 (M.D. Fla. Feb. 26, 2007) (quoting *Trustmark Ins. Co. v. ESLU,*

*Inc.*, 299 F.3d 1265, 1270 n.3, 1271 (11th Cir. 2002)).   Four elements must be satisfied: "'(1) there is a final judgment on the merits; (2) the decision was rendered by a court of competent jurisdiction; (3) the parties, or those in privity with them, are identical in both suits; and (4) the same cause of action is involved in both cases.'"  *Tuscano*, 179 F. App'x at 625 (quoting *Ragsdale v. Rubbermaid, Inc.*, 193 F.3d 1235, 1238 (11th Cir. 1999)); *see also Fumbah*, 205 F. App'x at 809; *Williams*, 2007 WL 641328, at *4.

The first two requirements are clearly met.  *See* Final Judgment (Doc. #442), entered in case 3:01-cv-301-J-HTS.  For claim preclusive purposes, it is immaterial whether judgment was rendered as to a particular issue.  It need only have entered on the merits of the "action[.]"  *Rivet v. Regions Bank of La.*, 522 U.S. 470, 476 (1998); *see also Epstein v. Visher*, No. C-95-4167 (DLJ), 1997 WL 231108, at *5 (N.D. Cal. Mar. 24, 1997) (whether certain issue actually litigated unimportant for res judicata purposes).[10]

Further, both Royal and Coachmen were parties to the previous litigation, in which Georgie Boy Manufacturing (as opposed to Georgie Boy Manufacturing, LLC) was a named defendant.  *See* Amended Complaint (Doc. #78), entered in case 3:01-cv-301-J-HTS.  "It is well-established that *res judicata* does not require complete

---

[10]      In any event, as concluded in the collateral estoppel section of this Order, the abuse of process count was adjudicated on the merits.

identity between all parties, but only that the parties were parties or successors to parties in the prior action." *Hodge v. McGowan*, Civ. No. 1992-84, 1993 WL 723699, at *5 (D.V.I. Dec. 23, 1993). *But cf. Johnston v. Kunkel*, No. 1:89-CV-1148, 1991 WL 335836, at *2 (W.D. Mich. Sept. 18, 1991) ("[T]he doctrine of *res judicata* normally requires complete identity of parties[.]") Although Georgie Boy Manufacturing, LLC, is specified herein as a Plaintiff, the Motion acknowledges "Plaintiffs and Defendant have been involved in previous litigation regarding related issues[.]" Motion at [externally numbered] 2; *see also*, *e.g.*, Proposed Complaint, attached to the Motion as Exhibit A, at [internally numbered] 6 ("The underlying action, . . . Case No.: 3:01-CV-301-J-16-HTS[,] and the appeals that followed were filed against Coachmen and GBM[.]"); Joint Notice of Prior-Related Litigation (Doc. #18) at 3 ("The instant case involves the identical parties[.]"). In sum, there is no doubt the parties in the present case were all parties in the first as well.

The fourth criterion, concerning whether the same cause of action is involved, demands more careful attention. The Eleventh Circuit has explained that, so long as "a case arises out of the same nucleus of operative fact, or is based upon the same factual predicate, as a former action, the two cases are really the same claim or cause of action for purposes of *res judicata*." *Tuscano*, 179 F. App'x at 625 (internal quotation marks omitted); *see also*

*Israel Discount Bank Ltd. v. Entin*, 951 F.2d 311, 315 (11th Cir. 1992) (quoting *Citibank, N.A. v. Data Lease Fin. Corp.*, 904 F.2d 1498, 1503 (11th Cir. 1990)).  In other words, "they must 'arise out of the same transaction or series of transactions.'"  *Israel Discount Bank Ltd.*, 951 F.2d at 315 (quoting *In re Justice Oaks II, Ltd.*, 898 F.2d 1544, 1551 (11th Cir. 1990)).

Here, as noted by the Proposed Complaint, the underlying suit (3:01-cv-301-J-HTS) grew out of a series of transactions involving still earlier state court litigation (the Haan case). *See* Proposed Complaint at [internally numbered] 3-5.  The proposed abuse of process count itself focuses significantly on the events of this antecedent state court case. *See id.* at [internally numbered] 7-8. There is, then, a shared factual predicate and the claim for abuse of process, which could have been--and actually was--raised in the prior proceedings before this Court, should be precluded by res judicata.

It could be argued a claim for abuse of process arising "'*after* the original pleading is filed in the earlier litigation'" does not trigger res judicata. *Pleming*, 142 F.3d at 1357 (quoting *Manning v. City of Auburn*, 953 F.2d 1355, 1360 (11th Cir. 1992)) (emphasis added); *Schafler*, 139 F. App'x at 150.  Still, Plaintiffs' own articulation of their intended cause of action, aside from invoking the events of the Haan litigation, concentrates on the commencement of the prior suit. *See* Proposed Complaint at

[internally numbered] 7 ("previous lawsuit was *filed* to force and/or improperly extract . . ."), 8 ("previous action was *filed* maliciously and willfully . . ."; "its filing of the action for ulterior purposes was unlawful").  At one point they allude to "[t]he use of the action for the ulterior purposes alleged[,]" *id.* at 8, but without elaboration.  Hence, if their own position be adopted, the claim would be seen as arising at the time the original pleading was filed in case 3:01-cv-301-J-HTS, not after. Whereas "[c]laims for malicious prosecution . . . often escape preclusion because they are found to arise only upon conclusion of the litigation said to have been wrongfully brought[,]" 18 Charles Alan Wright, et al., Federal Practice and Procedure § 4414 n.7 (2d ed. 2002), a cause of action for abuse of process does not derive its ripeness from the lawsuit's termination.  *See, e.g., T.D.S. Inc. v. Shelby Mut. Ins. Co.*, 760 F.2d 1520, 1534-35 n.18 (11th Cir. 1985) (discussing *Blue v. Weinstein*, 381 So. 2d 308 (Fla. Dist. Ct. App. 1980)); *Yoder v. Adriatico*, 459 So. 2d 449, 451 (Fla. Dist. Ct. App. 1984); *see also* R & R at 5-8.  *But see Bates v. Cook, Inc.*, 615 F. Supp. 662, 670 (M.D. Fla. 1984) ("A counterclaim for . . . abuse o[f] process cannot be maintained in a pending action since the abuse claimed is the pending suit which cannot be said to have terminated in favor of the counterclaimant.") (internal quotation marks omitted).

More importantly, an exception to the exclusion of claims (from the reach of res judicata) arising subsequent to the commencement of the underlying action exists where the claims were "actually asserted by supplemental pleadings or otherwise in [that] action." *Pleming*, 142 F.3d at 1357 (emphasis and internal quotation marks omitted); *cf. Schafler*, 139 F. App'x at 150. There can be little doubt Plaintiffs actually asserted their claim for abuse of process in the preceding case.[11] As the matter stands, the Court perceives no reason to withhold effectuation of res judicata.

### 2.   Collateral Estoppel (Issue Preclusion)

Alternatively, Defendant maintains collateral estoppel forecloses the count "because this Court already dismissed the same abuse of process claim in the first suit." Response at 8 (capitalization omitted).

Just as federal law governs claim preclusion in diversity cases, it fashions the contours of issue preclusion with respect to the present controversy. *See CSX Transp.*, 327 F.3d at 1316. "'Collateral estoppel bars relitigation of an issue previously decided if the party against whom the prior decision is asserted had "a full and fair opportunity" to litigate that issue in an earlier case.'" *United States v. Weiss*, 467 F.3d 1300, 1308 (11th Cir. 2006) (quoting *Blohm v. Comm'r of Internal Revenue*, 994 F.2d

---

[11]     For treatment of the differences between the count as raised in the Proposed Complaint versus its appearance in the Initial Counterclaim, please see part II.B.4 of this Order.

1542, 1553 (11th Cir. 1993)); *see also CSX Transp.*, 327 F.3d at
1317.  Four conditions need to be fulfilled: "(1) the issue in the
pending case is identical to that decided in a prior proceeding;
(2) the issue was necessarily decided in the prior proceeding; (3)
the party to be estopped was a party or was adequately represented
by a party in the prior proceeding; and[,]" lastly, "(4) the
precluded issue was actually litigated in the prior proceeding."
*Weiss*, 467 F.3d at 1308; *see also Pleming*, 142 F.3d at 1359
(employing somewhat different phrasing); Restatement (Second) of
Judgments (Restatement) § 27 (1982) ("When an issue of fact or law
is actually litigated and determined by a valid and final judgment,
and the determination is essential to the judgment, the
determination is conclusive in a subsequent action between the
parties, whether on the same or a different claim.") (emphasis
omitted).

The first and third elements do not appear to present a
problem for Defendant.  In both the Initial Counterclaim and the
Proposed Complaint, an issue presented is whether Royal abused the
Court's process in case 3:01-cv-301-J-HTS.  *See* Initial
Counterclaim at 5-6; Proposed Complaint at [internally numbered] 7-
8.  Further, as already discussed, the parties to the present
action took part in the former action.

However, whether the second and fourth requirements have been
met is somewhat more open to doubt, as the prior count was

dismissed without prejudice and with leave to amend. *See* R & R at 14; Order Adopting at 2.  In assessing whether the issue was actually litigated in the earlier suit, it has been noted that, generally, a dismissal "without prejudice do[es] not constitute a final decision" for collateral estoppel purposes. *Westlands Water Dist. v. U.S. Dep't of Interior, Bureau of Reclamation*, 850 F. Supp. 1388, 1400 (E.D. Cal. 1994).  Had the defendants in the prior suit seized the opportunity to amend the Initial Counterclaim, there would certainly be insufficient grounds for applying collateral estoppel as a result of the dismissal without prejudice. *See Friedman v. S.C. Ins. Co.*, 93-2130-CIV-T-17A, 1995 WL 89447, at *1 (M.D. Fla. Feb. 17, 1995).  Yet, it has been said that, "if the deadline for the amendment . . . has passed, the dismissal is considered final." *Scoon v. Tappan*, 87 F. App'x 769, 771 n.2 (2d Cir. 2004).  *But cf. Bealer v. Mut. Fire, Marine & Inland Ins. Co.*, No. Civ.A.04-5915, 2005 WL 1819971, at *3 n.2 (E.D. Pa. Aug. 1, 2005) (where no judgment entered, order dismissing claims with leave to amend may not automatically become final judgment on merits when proponent fails to amend).  As already observed, no amendment was filed subsequent to the Order Adopting, and ultimately a final judgment entered.

Moreover, the dismissal, although without prejudice to remedial modification of the count within a limited period of time, was based on a failure to state a claim.  "Ordinarily, a dismissal

for failure to state a claim is treated as a dismissal on the merits, and there is abundant case law to this effect." *AVX Corp. v. Cabot Corp.*, 424 F.3d 28, 30 (1st Cir. 2005); *see also Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211, 228 (1995); *Alabama ex rel. Siegelman v. U.S. EPA*, 911 F.2d 499, 503 n.10 (11th Cir. 1990) ("That '[a] dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is a "judgment on the merits"' is well established.") (alteration in original) (quoting *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 399 n.3 (1981)). Accordingly, the Court's dismissal of the claim for abuse of process should be deemed, under the circumstances, a judgment on the merits satisfying the fourth criterion for application of collateral estoppel.

It must finally be considered whether the issue presently urged "was necessarily decided in the prior proceeding[.]" *Weiss*, 467 F.3d at 1308. This prong relates to the Restatement's recognition of a requirement that the factual or legal "determination [was] essential to the judgment[.]" Restatement § 27 (emphasis omitted). In the prior litigation, the legal validity of the Initial Counterclaim's abuse of process count was squarely before the Court and expressly resolved. *Cf. Perkins v. Am. Elec. Power Fuel Supply, Inc.*, 91 F. App'x 370, 375 n.2 (6th Cir. 2004) (observing it has been "held that a court's express resolution of an issue can be 'necessary' to its judgment even where failure to

address the issue would have had no effect on the outcome of the case").  Its ruling upon this claim was essential to the final resolution of the litigation, and therefore the issue was necessarily decided.

Occasionally, "a 'change or development in the controlling legal principles' may . . . prevent the application of collateral estoppel even though an issue has been litigated and decided[.]" *N. Ga. Elec. Membership Corp. v. City of Calhoun*, 989 F.2d 429, 433 (11th Cir. 1993) (quoting *Comm'r v. Sunnen*, 333 U.S. 591, 599 (1948)); *cf. id.* at 434 (noting that in recent Supreme Court cases, "collateral estoppel [has] generally protect[ed] defendants from repetitive litigation, unless prior law has been essentially overruled").  In examining the viability of the Initial Counterclaim's allegations regarding abuse of process, the Court defined the cause as "'[t]he improper and tortious use of a legitimately issued court process to obtain a result that is either unlawful or beyond the process's scope.'"  R & R at 5 (quoting *Black's Law Dictionary* 10 (7th ed. 1999)).  "In order to prevail on an abuse of process claim," it continued, "the pleader must show the following: '(1) [there was] an illegal, improper, or perverted use of process; (2) [there was] an ulterior motive or purpose in exercising the illegal, improper or perverted process; and (3) the [pleader] was injured as a result of [the] action.'"  *Id.* at 5 n.2 (quoting *Hardick v. Homol*, 795 So. 2d 1107, 1111 n.2 (Fla. Dist.

- 18 -

Ct. App. 2001));[12] *see also id.* at 5-6 (citing *McMurray v. U-Haul Co.*, 425 So. 2d 1208, 1209 (Fla. Dist. Ct. App. 1983); *Bothmann v. Harrington*, 458 So. 2d 1163, 1169 n.8 (Fla. Dist. Ct. App. 1984); and Restatement (Second) of Torts § 682 (1977)).  To the undersigned's knowledge, there have not been "'major' changes" to the controlling law, *N. Ga. Elec. Membership*, 989 F.2d at 433-34 (describing the view taken by "[m]ore recent Supreme Court cases"), that would justify revisiting the issue.  Indeed, the test articulated by the *Hardick* court has since been cited approvingly. *See Valdes v. GAB Robins N. Am., Inc.*, 924 So. 2d 862, 867 n.2 (Fla. Dist. Ct. App. 2006).  Nor have factual changes surfaced to undermine application of collateral estoppel. *Cf. New Hampshire v. Maine*, 532 U.S. 742, 755-56 (2001) (parenthetically quoting *Montana v. United States*, 440 U.S. 147, 159 (1979), which remarked that collateral estoppel is inapplicable where there have been "changes in facts essential to a judgment"); *N. Ga. Elec. Membership*, 989 F.2d at 436 (discussing *Montana*).  Thus, it is held Plaintiffs' are collaterally estopped from reasserting their claim for abuse of process.

---

[12]    Jurisdiction for both the present and former actions deriving from diversity of citizenship, the substantive law of the forum state controls "unless federal constitutional or statutory law compels a contrary result."  *Admiral Ins. Co. v. Feit Mgmt. Co.*, 321 F.3d 1326, 1328 (11th Cir. 2003).

### 3. Compulsory Counterclaim

Even if the matter is not framed in terms of res judicata or collateral estoppel, Plaintiffs' present ability to raise abuse of process would depend on whether the alleged cause of action arose "out of the transaction or occurrence that [was] the subject matter of the opposing party's [former] claim and [did] not require for its adjudication the presence of third parties of whom the court [could not] acquire jurisdiction."  Rule 13(a).  If so, it was a compulsory counterclaim requiring adjudication during the initial suit, and may not be advanced as part of the current action.  *See Nippon Credit Bank, Ltd. v. Matthews*, 291 F.3d 738, 755 (11th Cir. 2002) (per curiam) ("Compulsory counterclaims which are not brought are 'thereafter barred.'") (quoting *Baker v. Gold Seal Liquors, Inc.*, 417 U.S. 467, 469 n.1 (1974)); *see also* 6 Charles Alan Wright, et al., Federal Practice and Procedure § 1409 (2d ed. 1990) (same, and further observing the designation of some counterclaims as compulsory serves "the desire to adjudicate all the disputes between the parties in one action").

There is no indication the presence of extrajurisdictional third parties stood as any sort of obstacle, leaving for inquiry only Rule 13(a)'s test concerning the genesis of the claim.  In regard to the proper definition of "transaction or occurrence[,]" "[c]ourts generally have agreed that these words should be interpreted liberally in order to further the general policies of

the federal rules[13] and carry out the philosophy of Rule 13(a)."
6 Charles Alan Wright, et al., Federal Practice and Procedure §
1410 (2d ed. 1990).  However, the authorities "have split on the
question whether an abuse of process claim is a compulsory
counterclaim in the very action which allegedly is abusive."
*Pochiro v. Prudential Ins. Co. of Am.*, 827 F.2d 1246, 1252 (9th
Cir. 1987) (rejecting "the line of cases that has refused to find
an abuse of process claim a compulsory counterclaim" and relying
on, among other authorities, *Carteret Savings & Loan Ass'n v.
Jackson*, 812 F.2d 36, 38-39 (1st Cir. 1987) and *Miami Herald Publ'g
Co. v. Ferre*, 636 F. Supp. 970, 972-73 (S.D. Fla. 1985)); *cf.
Brasel v. Hynes*, CIV. No. C86-2093, 1987 WL 68491, at *2 (N.D. Ga.
Jan. 13, 1987) (compulsory counterclaim); *Gen. Motors Corp. v.
Alberic Colon Auto Sales, Inc.*, Civil No. 05-1001(GAG), 2007 WL
1557102, at *2 (D.P.R. May 29, 2007) (same).

The logical relationship of a counterclaim for abuse of
process to the transaction or occurrence forming the subject matter
of a plaintiff's claim may not be strong in every case.
Theoretically, too, the discovery of evidence giving rise to the
claim might occur long after the process is misused.  While under
those circumstances it would be unfair to deem compulsory a

---

[13]     Rule 1, for instance, highlights concerns for efficiency by stating the
Rules "shall be construed and administered to secure the just, speedy, and
inexpensive determination of every action."

counterclaim for abuse of process,[14] here it is clear Plaintiffs were aware of the purported basis for their allegations at a sufficiently early stage in the previous case to have pressed the matter then--as evidenced by their abortive attempt to do so. Also, as alluded to in the res judicata discussion, *supra*, the allegations set forth to show Royal committed an abuse of process rely upon events forming the subject matter of the claim in case 3:01-cv-301-J-HTS.  Therefore, in light of the purposes served by the applicable Rules, it is held Coachmen and GBM's counterclaim for abuse of process was compulsory and so cannot be reasserted herein.

### 4.   Frivolity/Failure to State a Claim

Observing that "Coachmen's new abuse of process claim is nearly identical to its original abuse of process claim[,]" which "this Court has already found . . . fails to state a cause of action[,]" Royal contends the "proposed . . . claim is therefore frivolous[.]"  Response at 11 (capitalization omitted).

In the portion of the Court's Order addressed to collateral estoppel, *supra*, it has determined the law pertaining to abuse of process remains essentially unchanged.  Hence, a pleader would still need to show "an illegal, improper, or perverted use of

---

[14]     Worth noting, any worries along these lines should be substantially lessened by Rule 13(a)'s limitation to claims "the pleader has" at the time of pleading.  A litigant who only afterward discovers the basis for a counterclaim ought to have an argument that it is not compulsory under the rule.

process; . . . an ulterior motive or purpose in exercising the illegal, improper or perverted process; and [injury to the pleader] as a result of [the] action." *Hardick*, 795 So. 2d at 1111 n.2.

The first time around, Coachmen, GBM and others alleged Royal had sued "to force and/or improperly extort [them] to pay an unjust request for monies to Royal after" it had voluntarily settled the antecedent lawsuit.  Initial Counterclaim at 5.  They asserted the action had been "filed maliciously and willfully[,]" with actual or constructive knowledge "that all theories of liability" employed were baseless, and was being used "for a wrongful and unlawful object and an ulterior purpose not intended by law." *Id.*  Royal's actions had resulted in the incursion of attorney fees and purportedly effected "other damages, including but not limited to damages to [Counterclaimants'] reputation in the community." *Id*. at 5-6.  The Court found these allegations insufficient, perceiving a failure "to assert how the process was used illegally or improperly" or otherwise "misused."  R & R at 8.  Instead of stating a cause of action for abuse of process, the counterclaim had described malicious prosecution.  *Id.*

Coachmen and GBM seek to recycle their dismissed claim with limited modifications.  For example, they have added a statement that "Royal, as Plaintiffs' insurer, had a contractual and legal duty to pay or at leas[t] serve notice of their intention not to pay the [earlier] claim."  Proposed Complaint at [internally

numbered] 7.  In addition to complaining of reputational damage resulting from Defendant's actions, they now include such injury amongst Royal's "wrongful purposes[.]"  *Id.* at [internally numbered] 8.  Finally, they assert their position "Royal knew or should have known that all theories of liability that it asserted against the Plaintiffs in that previous litigation had no basis" is "evidenced by the Judgment thereon[.]"  *Id.*

The only one of these changes that ventures remotely close to helping Plaintiffs state a cause of action for abuse of process is the expansion of Defendant's supposed wrongful purposes to encompass damage to Coachmen and GBM's reputation.  It may be that allegations describing Royal's use of process to achieve such injury would suffice.  *Cf. Poduska v. Ward*, 895 F.2d 854, 856 (1st Cir. 1990) (noting that, in *Datacomm Interface, Inc. v. Computerworld, Inc.*, 489 N.E.2d 185 (Mass. 1986), and *Neumann v. Vidal*, 710 F.2d 856 (D.C. Cir. 1983), "courts recognized an injury to . . . business reputation as an improper ulterior motive and abuse of process"); R & R at 8 ("[H]ow the process was used illegally or improperly" must be pled.).  Nevertheless, even if the assertions are deemed adequately detailed, Plaintiffs alterations fall short.  Reputational damage is portrayed, not as Defendant's sole or primary goal, but as "an incidental or concurrent . . . ulterior purpose."  *Bothmann*, 458 So. 2d at 1169 (determining no abuse of process regardless of concurrent or incidental ulterior

purpose and stating "[a]buse of process involves the use of . . . process against another *primarily* to accomplish a purpose for which it was not designed") (emphasis added); *see also Biondo v. Powers*, 805 So. 2d 67, 69 (Fla. Dist. Ct. App. 2002); *Scozari v. Barone*, 546 So. 2d 750, 751 (Fla. Dist. Ct. App. 1989) (per curiam); R & R at 6.  The Court previously remarked it seemed Royal was "merely following the process through to its authorized conclusion[,]" R & R at 8, and the proposed abuse of process count adds nothing to counter that observation.  Because "there is no liability where the [opposing party] has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions[,]" *Bothmann*, 458 So. 2d at 1169 n.8, it is concluded allowing the intended amendment would be futile as to the proposed count for abuse of process.  Despite the additions, it fails to state a claim for that tort.

### 5.   **Abandonment/Waiver**

Royal argues Plaintiffs have waived or abandoned their "right to assert an abuse of process claim by failing to re-plead this claim after this Court dismissed [it] in the first suit." Response at 11 (capitalization omitted).  Specifically, it submits, "[t]his Court gave Coachmen 11 days to amend its abuse of process claim to state a cause of action.  Rather than amending . . ., Coachmen abandoned this claim." *Id.* at 11-12 (capitalization omitted). Plaintiffs' "failure to re-plead [the] claim in the first suit

is[,]" according to Defendant, "conduct from which this Court can [infer] that Coachmen waived its right to assert this claim." *Id.* at 12 (capitalization omitted).

"'In diversity of citizenship actions[,] state law defines the nature of defenses, but the Federal Rules of Civil Procedure provide the manner and time in which defenses are raised and when waiver occurs.'" *Troxler v. Owens-Illinois, Inc.*, 717 F.2d 530, 532 (11th Cir. 1983) (quoting *Morgan Guar. Trust Co. of N.Y. v. Blum*, 649 F.2d 342, 344 (5th Cir. 1981)) (alteration added to reflect punctuation of original text). Analogously, federal principles will be consulted to discern when a waiver or abandonment of a dismissed claim has taken place.

In the absence of an order dismissing the omitted count, an amended pleading that fails to include it is often held to reflect a waiver or abandonment of the claim. *See, e.g., Kolling v. Am. Power Conversion Corp.*, 347 F.3d 11, 16 (1st Cir. 2003) (stating that, by omitting a particular claim from the amended complaint, the plaintiff had abandoned it; however, noting "this is not a case in which the district court dismissed" the claim "from the original complaint, which would have made the waiver issue much more difficult"). As recounted above, though, the Initial Counterclaim's abuse of process allegations were dismissed with leave to amend.

Were this Court bound by Ninth Circuit precedent, the matter would likely be more straightforward. In *Parrino v. FHP, Inc.*, 146 F.3d 699, 704 (9th Cir. 1998), it was held "[a] plaintiff waives all claims dismissed with leave to amend by failing to reallege those claims in his amended complaint." Nonetheless, other courts generally view the situation with more trepidation. *See, e.g., P. Stolz Family P'ship L.P. v. Daum*, 355 F.3d 92, 96 (2d Cir. 2004) (determining a party whose claim has been dismissed without leave to amend would not need to replead for purposes of preserving the issue for appeal, but "indicat[ing] no views on the appropriate standard for cases where the district court has granted leave to amend a dismissed claim").

In a footnote, the United States Court of Appeals for the Eleventh Circuit has commented it does "not require a party to replead a claim following a dismissal under Rule 12(b)(6) to preserve objections to the dismissal on appeal." *Dunn v. Air Line Pilots Ass'n*, 193 F.3d 1185, 1191 n.5 (11th Cir. 1999) (citing only *Wilson v. First Houston Inv. Corp.*, 566 F.2d 1235, 1237-38 (5th Cir. 1978),[15] vacated on other grounds, 444 U.S. 959 (1979)). The district court in *Dunn* had not provided leave to amend as part of its dismissal order, but it did express a willingness to entertain "a motion for leave to file a second amended complaint[.]" *Dunn v.*

---

[15]     In *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (1981), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit issued before October 1, 1981.

*Air Line Pilots Ass'n*, 836 F. Supp. 1574, 1584 (S.D. Fla. 1993). And *Wilson* directly held the filing of an amended complaint bereft of a certain claim after it is dismissed with leave to amend does not amount to waiver of the right to appeal the dismissal.  566 F.2d at 1237-38.

Assuming the breadth of a party's right to appeal is left intact by a failure to replead dismissed claims does not, unfortunately, fully answer the question before the Court.  The effect, if any, of Plaintiffs' decision not to appeal the dismissal with leave to amend must be assessed.  Perhaps a decision not to reassert a claim combined with the party's neglecting to appeal the dismissal order suffices to communicate a waiver or justifies deeming the claim abandoned for all time.  Yet, taken to this point, the concept of waiver/abandonment and the various claim preclusion doctrines begin to merge.  *Cf., e.g., Sosebee v. State Farm Mut. Auto. Ins. Co.*, 164 F.3d 1215, 1217 (9th Cir. 1999) (per curiam) (plaintiff "confronted by the preclusive effect of" her earlier suit as "[e]ither she failed to plead [the] claim" in the prior action "or it was dismissed by the trial judge and she failed to appeal that decision").  Thus, within the framework of the applicable body of law, the Court detects in a waiver or abandonment theory no truly independent grounds for barring the proposed count.

### 6. Laches

"Equity[,]" and more specifically the doctrine of laches, proposes Defendant, "warrants precluding Coachmen from asserting [abuse of process] in this action." Response at 12 (capitalization omitted). The lone authority cited for this proposition in Royal's wide-ranging brief is a 1934 Florida Supreme Court decision, *Smith v. Daffin*, 155 So. 658.

There is a body of caselaw supporting the idea that diversity jurisdiction is consistent with the application of federal equitable concepts. *See, e.g., Perfect Fit Indus., Inc. v. Acme Quilting Co.,* 646 F.2d 800, 806 (2d Cir. 1981) ("State law does not govern the scope of the equity powers of the federal court; and this is so even when state law supplies the rule of decision.") (citing *Guar. Trust Co. v. York*, 326 U.S. 99, 106 (1945); *Clark Equip. Co. v. Armstrong Equip. Co.*, 431 F.2d 54 (5th Cir. 1970)); *Allapattah Servs., Inc. v. Exxon Corp.*, 454 F. Supp. 2d 1185, 1200 (S.D. Fla. 2006) (relying on *Perfect Fit* and *Clark Equipment*, among other cases, to apply federal common law to determination of fee awards in diversity case "irrespective of state law"). Nevertheless, "as a general rule, when forum state law defines the underlying substantive right, state law also governs the availability of . . . equitable remedies[.]" 19 Charles Alan Wright, et al., Federal Practice and Procedure § 4513 (2d ed. 1996). In particular, it is said "the forum state's law determines

. . . the standard for laches."  4 Charles Alan Wright & Arthur R.
Miller, Federal Practice and Procedure § 1045 (3d ed. 2002); *see
also* John T. Cross, *The Erie Doctrine in Equity*, 60 La. L. Rev.
173, 229 (1999) ("clear majority rule" holds federal courts are not
"free to deny equitable relief based upon laches or unclean hands
regardless of whether that defense would apply in a state
proceeding").

Under Florida law, laches can be invoked where there has been
"an unreasonable delay in asserting a known right which causes
undue prejudice to the party against whom the claim is asserted."
*Baker v. Baker*, 920 So. 2d 689, 693 (Fla. Dist. Ct. App. 2006)
(emphasis omitted).  Undue prejudice must be shown "by 'very clear
and positive evidence.'"  *Id.* (quoting *Smith v. Branch*, 391 So. 2d
797, 798 (Fla. Dist. Ct. App. 1980)).

> "[T]he delay required to render the defense of laches
> available must have been such as practically to preclude
> the court from arriving at a safe conclusion as to the
> truth of the matters in controversy, and thus make the
> doing of equity either doubtful or impossible, as through
> . . . loss or obscuration of evidence of the transaction
> in issue; or there must have occurred in the meantime a
> change in conditions that would render it inequitable to
> enforce the right asserted."

*Id.* (quoting *Stephenson v. Stephenson*, 52 So. 2d 684, 686 (Fla.
1951) (per curiam)) (first alteration in original, second added to
reflect original text).

A Florida limitations provision adds a statutory twist by
establishing that "laches" automatically bars "any action unless it

is commenced within the time provided for legal actions concerning the same subject matter[.]"  Fla. Stat. § 95.11(6) (2001).  Still, the law left unaffected "application of laches at an earlier time in accordance with law."  *Id.*

The statute just quoted does not indicate whether the defense of laches (in the traditional equitable sense) can be used against so-called "legal" actions[16] to constrict (more severely than the prescribed limitations period) the temporal window during which a claim may be commenced.  Traditionally, "[e]quitable defenses focus on whether it is fair to allow a party who has misbehaved to invoke the extraordinary powers of equity."  Cross, *supra*, at 229; *cf. County of Oneida v. Oneida Indian Nation of N.Y. State*, 470 U.S. 226, 244 n.16 ("[A]pplication of the equitable defense of laches in an action at law would be novel indeed.")*; Erkins v. Bryan*, 785 F.2d 1538, 1543 (11th Cir. 1986) (laches appropriate test since suit "essentially equitable in nature").  Florida law, on the other hand, appears to permit "'equitable defenses . . . in law actions[.]'"  *PMI Mortgage Ins. Co. v. Cavendar*, 615 So. 2d 710, 712 (Fla. Dist. Ct. App. 1993) (per curiam) (quoting *Frank v. Levine*, 159 So. 2d 665 (Fla. Dist. Ct. App. 1964)).  *But cf. Smith*,

---

[16]    The proposed count for abuse of process, seeking money damages, can be classified as an action at law.  *See, e.g., Grimes v. Janesville Prods.*, 111 F.3d 140, Nos. 95-6439, 95-6460, 96-6002, 1997 WL 183547, at *3 (10th Cir. 1997) (Table) ("[M]onetary damages are characteristic of actions at law and not of those in equity.")*; Donangelo, Inc. v. Town of Northumberland*, No. 1L03 CV 934, 2005 WL 681494, at *3 (N.D.N.Y. Mar. 24, 2005) (referring to "an action at law for monetary damages, as opposed to equitable injunctive relief").

155 So. at 660 (suggesting laches only available where equitable relief sought); Response at 12 (defense can be used against "person seeking aid of court of equity").

Even accepting the potential applicability of the doctrine to an action at law, Royal has not met the Florida common law standard for establishing laches.  It offers nothing to show it has been unduly prejudiced by Plaintiffs' delay.  The Response simply summarizes the *Smith v. Daffin* case, points out Coachmen and GBM raised abuse of process once before, and urges the Court to wield a sword of equity against the proposed count.  Response at 12. This is plainly insufficient to warrant adding laches to the list of grounds underlying this Order's denial of the Motion.

### 7.   Statute of Limitations

The final attack leveled by Defendant in its effort to frustrate Plaintiffs' attempt to add a claim for abuse of process is based on "Florida's [four year] statute of limitations for intentional torts[.]"  *Id.* (citing Fla. Stat. § 95.11(3)(o) (2007)).

"In a suit where federal jurisdiction is founded on diversity of citizenship, the statute of limitations is governed by state law[.]" *Aucoin v. Connell*, 209 F. App'x 891, 892 (11th Cir. 2006) (per curiam); *see also Saxton v. ACF Indus., Inc.*, 254 F.3d 959, 961-62 (11th Cir. 2001); 4 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1045 (3d ed. 2002) ("[T]he forum

state's law determines the applicable limitations period[.]"). Section 95.11(3)(o), Florida Statutes, establishes that actions for malicious prosecution "or any other intentional tort," with certain exceptions, are to be commenced within four years.  Abuse of process is properly considered an intentional tort.  *See Indem. Ins. Co. of N. Am. v. Am. Aviation, Inc.*, 891 So. 2d 532, 543 n.3 (Fla. 2004).  But whether governed by section 95.11(3)(o) or by section 95.11(3)(p), which covers "[a]ny action not specifically provided for in" the statute, the applicable period would be four years.  *See, e.g., Callaway Land & Cattle Co. v. Banyon Lakes C. Corp.*, 831 So. 2d 204, 208 (Fla. Dist. Ct. App. 2002) (abuse of process normally falls under four-year limitation of section 95.11(3)(p)); *Blue*, 381 So. 2d at 311 (citing section 95.11(3)(o)). Since a cause of action for abuse of process ripens without regard to cessation of the lawsuit "in which process issued[,]" *Blue*, 381 So. 2d at 311; *see also Yoder*, 459 So. 2d at 451, "the statute of limitations begins to run from the termination of the acts which constitute the abuse complained of[,]" and so "may very well expire before the main action . . . is terminated." *Blue*, 381 So. 2d at 311; *cf. Parham v. Balis*, 704 So. 2d 623, 626 (Fla. Dist. Ct. App. 1997) (Fulmer, J., concurring) ("A statute of limitations . . . begins to run at the time an injury occurs or is discovered.").

Given that Plaintiffs have already raised abuse of process in timely fashion in the prior suit, a question naturally suggests

itself: Can the newly-tendered count relate back to the Initial
Counterclaim and thereby avoid the statute of limitations?  Rule
15(c)(1) directs that relation back is allowed in a federal case
when "relation back is permitted by the law that provides the
statute of limitations applicable to the action[.]"  *See also*
*Saxton*, 254 F.3d at 962-63 ("Rule 15(c)(1) incorporates the
relation-back rules of the law of a state when that state's law
provides the applicable statute of limitations.").  Florida Rule of
Civil Procedure 1.190(c), mirroring Rule 15(c)(2), dictates that an
"amendment shall relate back to the date of the original pleading"
where "the claim or defense asserted in the amended pleading arose
out of the conduct, transaction, or occurrence set forth or
attempted to be set forth in the original pleading[.]"  The Court
has unearthed no Florida authority interpreting "original pleading"
to include documents filed in past lawsuits, and it does not read
the rule to countenance a standard so liberal.  Likewise, federal
caselaw cautions "that the 'original pleading' may not be a
pleading filed in a different case."  *Carter v. Tex. Dep't of*
*Health*, 119 F. App'x 577, 581 (5th Cir. 2004) (per curiam)
(collecting cases).

Counting four years from the filing date of the suit featuring
the process claimed abusive, Defendant states "Coachmen should have
asserted its cause[] of action . . . by, at the latest, on or about
March 15, 2005."  Response at 13 (capitalization and italicization

omitted).  Viewing the matter more conservatively, it should be safe to assume Coachmen and GBM understood the cause had ripened by October 15, 2001--the date they filed a substantially similar count.  *See* Initial Counterclaim.  Thus, by the time Plaintiffs commenced this lawsuit in 2006, the relevant limitations period had expired.

### C.   Statutory Bad Faith

In regard to Plaintiffs' desire to add a count for statutory bad faith, Royal contends "this Court has already rejected Coachmen's identical bad faith theory on the merits in the first suit."  Response at 2 (capitalization omitted).  It "was also previously litigated because Coachmen attempted to assert this claim in the first suit, though this Court denied [the] request to do so.  Coachmen's attempt to bring this claim now also constitutes an improper splitting of the causes of action."  *Id.* (capitalization omitted).

Reminiscent of the barrage it has fired against the proposed abuse of process count, Royal catapults a host of legal precepts at Plaintiffs' intended claim for statutory bad faith.  In addition to res judicata, the prohibition of cause splitting, and the compulsory counterclaim rule, Defendant unleashes "judicial estoppel . . ., collateral estoppel, waiver, laches, and the statute of limitations."  *Id.* at 4.  Lastly, for good measure, it is insisted the proposed claim is frivolous.  *See id.* at 11.

**1.   Res Judicata/Cause Splitting, Collateral Estoppel, Compulsory Counterclaim[17]**

Coachmen and GBM explain that "[t]he record of this litigation and the previous litigation shows that the statutory bad faith claim was never affirmatively plead or ruled upon.  Furthermore, there is no indication that [they] failed to cure previous deficiencies.  In fact," it is urged, "the Court merely denied Plaintiffs' Motion for Enlargement of Time to file a statutory bad faith claim."  Motion at [externally numbered] 3 (capitalization omitted).

Royal balks at Plaintiffs' reasoning, branding as "a distinction without a difference[,]" Response at 4, the idea that denial of a motion for enlargement of time to file a claim does not equate to denial of leave to amend.  It concludes "[t]he Court's order barred Coachmen from asserting a statutory bad faith claim in the first suit and this order thus bars Coachmen from asserting this claim now."  *Id.* (capitalization omitted).

On the last permissible day for doing so, as specified by the scheduling order in the prior suit, Coachmen and GBM filed their Initial Counterclaim.  They then moved, on the same day, for leave "to assert an additional cause of action . . . pursuant to Section

---

[17]      The basic legal standard applied with regard to these doctrines is set out in Part II.B. of this Order.  While cause splitting is not explicitly discussed, the prohibition against it falls within the concept of res judicata.  *See, e.g., Olympia Hotels Corp. v. Johnson Wax Dev. Corp.*, 908 F.2d 1363, 1367 (7th Cir. 1990).

624.155, Fla. Stat." Defendants' Motion for Enlargement of Time to File Counterclaim Against Plaintiff Pursuant to Section 624.155 Fla. Stat. (Doc. #46; Motion for Enlargement), filed in case 3:01-cv-301-J-HTS, at 1.  The extension was requested since they had not yet provided "the Department of Insurance and [Royal] sixty (60) days written notice[,]" as required by statute.  *Id.*  As it was "unclear why they could not [have met] the deadline established by the Court[,]" the Motion for Enlargement was denied.  Order (Doc. #61), filed in case 3:01-cv-301-J-HTS, at 6-7.  This ruling eventually became final.[18]

The Court finds application of res judicata proper under the circumstances.  As determined in the context of the proposed abuse of process count, a final judgment concerning the same parties was rendered by a court of competent jurisdiction.  Lastly, the allegations of statutory bad faith arise out of the same factual core, or rest upon the same predicate, as the earlier action.  The count Plaintiffs would like to now add clearly derives from the events of the Haan litigation and from Royal's decision to sue Coachmen and GBM in connection with the handling of that case.  *See* Proposed Complaint at [internally numbered] 9-10.

Regardless of the seemingly easy fit, however, there is a possible snag.  As explicated below in relation to the non-

---

[18]    Amendment of the counterclaim was later permitted, but not for the purpose of appending new counts.  *See* Order (Doc. #399), entered in case 3:01-cv-301-J-HTS, at 11.

compulsory status of the counterclaim, due to a mandatory notice period the statutory bad faith claim did not entirely mature upon Royal's initiation of its lawsuit.  Some authority takes the position that "[o]nly compulsory, and not permissive, counterclaims are subject to res judicata." *Cousins v. Duane St. Assocs.*, 7 F. App'x 85 (2d Cir. 2001).  In a related vein, as noted, *supra*, with regard to the proposed abuse of process count, the Eleventh Circuit has disclosed a belief that res judicata stops short of precluding "'claims which arise after the original pleading is filed in the earlier litigation'" unless the claims were "'actually asserted by supplemental pleadings or otherwise in [that] action.'" *Pleming*, 142 F.3d at 1357 (quoting *Manning*, 953 F.2d at 1360) (emphasis omitted); *cf. Schafler*, 139 F. App'x at 150.  Clarifying the exception, the court has summed up as follows: "In this Circuit, therefore, res judicata does not bar a claim that was not in existence at the time of the original action unless the *facts underlying the claim* were actually raised in that action." *In Re Piper Aircraft Corp.*, 244 F.3d 1289, 1299 (11th Cir. 2001) (emphasis added).

A comparison of the earlier claim for common law bad faith with the present count for statutory bad faith shows the bulk of the alleged facts underlying the new claim were actually raised previously.  What's more, they were raised in a counterclaim submitted a considerable number of months after the lawsuit was

initiated, by which time the Court saw no reason why the statutory bad faith claim could not also have been prepared and filed. Coachmen and GBM had enjoyed ample opportunity to provide the requisite notice and bring their allegations. Under these unusual circumstances,[19] it would seem the doctrine of res judicata is flexible enough to prevent the belated assertion of this claim that, in practical terms, should have been timely raised in the first suit.

Turning to collateral estoppel, Royal speculates the doctrine's requirement of identical issues having necessarily been decided is met because, "[t]hough this Court did not dismiss Coachmen's statutory bad faith claim on the merits, this Court did dismiss on the merits Coachmen's common law bad faith claims that asserted the identical theory of liability." Response at 8 (capitalization omitted). This is unavailing. In dismissing the earlier claim for failure to state a claim upon which relief may be granted, the Court emphasized it had "uncovered[ no] authority indicating conduct subsequent to settlement can give rise to a common law bad faith claim under Florida law." Order (Doc. #435), filed in case 3:01-cv-301-J-HTS, at 8; see also id. at 7-8 (noting lack of allegation Royal acted in bad faith by not settling Haan claim sooner). The proposed statutory bad faith claim, aside from

---

[19]    Counting amongst the unusual facets is the rather technical reason for considering the statutory bad faith claim non-compulsory.

being brought pursuant to a distinct source of law, explicitly alleges misconduct on Royal's part prior to the settlement. *See* Proposed Complaint at [internally numbered] 9-10.

Provoking a closer call is Defendant's argument the claim for statutory bad faith constituted a compulsory counterclaim. Citing no authority in support, Royal alleges "Coachmen could have asserted [the] claim as part of the counterclaim that it asserted in the first action." Response at 6 (capitalization omitted). However, as acknowledged in the Motion for Enlargement and not disputed by Defendant, Coachmen and GBM could not go forward with a statutory bad faith count until the expiration of a sixty-day notice period. It has been held that, "because . . . liability . . . for statutory bad faith penalties simply does not accrue until sixty days have passed," the claims are not compulsory. *Ayers Enters., Ltd. v. Exterior Designing, Inc.*, 829 F. Supp. 1330, 1332 n.3 (N.D. Ga. 1993) (internal quotation marks omitted);[20] *cf. Lee v. Sec. Nat'l Ins. Co.*, 943 So. 2d 887, 888 (Fla. Dist. Ct. App. 2006) (recounting that statutory bad faith counterclaim had been dismissed as premature).

Recognizing it is possible to reason the statutory bad faith claim *became* compulsory in the particular litigation at issue, the Court will not resort to this path merely for the sake of avoiding

---

[20]     While *Ayers* dealt with a Georgia substantive provision, its characterization of the counterclaim presumably reflects the application of federal procedural principles.

an appearance of tension with its res judicata holding. Rule 13(a) is unyielding in its formulation, pertaining only to "any claim which at the time of serving the pleading the pleader has[,]" (emphasis added), not to claims the pleader *would have had* a right to present through the exercise of reasonable diligence. This is not surprising. The rule cannot prudently command a pleader to bring a claim the pleader has no present right to assert. Yet, nowhere embodied in Rule 13 is a license to delay or a statement that res judicata is necessarily inapplicable to all counterclaims not technically labeled compulsory. If the only barrier to the submission of an otherwise compulsory counterclaim is a party's own failure to set it up, res judicata should not thereby automatically vanish from the list of available constraints.

**2. Judicial Estoppel, Law of the Case, Election of Remedy**

Defendant contends judicial estoppel serves as another doctrinal layer blocking the assertion of Coachmen and GBM's proposed statutory bad faith claim. It relies on "the Eleventh Circuit [having] affirmed this Court's dismissal of Coachmen's counterclaim in the first suit, including Coachmen's common law bad faith claims." Response at 9 (capitalization omitted).

It does not seem judicial estoppel is the defense Royal intended to press. Ordinarily,

> [j]udicial estoppel bars a party from asserting a
> position in a legal proceeding that is inconsistent with
> its position in a previous, related proceeding. It is

> designed to prevent parties from making a mockery of justice by inconsistent pleadings. Courts consider two factors in determining whether to apply the doctrine: whether the allegedly inconsistent positions were made under oath in a prior proceeding and whether such inconsistencies were calculated to make a mockery of the judicial system.

*United States v. Campa*, 459 F.3d 1121, 1152 (11th Cir. 2006) (footnotes and internal quotation marks omitted); *see also New Hampshire*, 532 U.S. at 749-51. Far from contending Coachmen and GBM are taking inconsistent positions, Defendant is arguing they are trying to reassert the same position already rejected. Moreover, neither published Eleventh Circuit case cited in this section of its brief, *Alphamed, Inc. v. B. Braun Med., Inc.*, 367 F.3d 1280 (2004), nor *Piambino v. Bailey*, 757 F.2d 1112 (1985), mentions judicial estoppel.

There are indications Defendant views judicial estoppel as synonymous with "'the law of the case' doctrine[.]" Response at 4, 9. "Under the law-of-the-case doctrine, 'the findings of fact and conclusions of law by an appellate court are generally binding in all subsequent proceedings *in the same case* in the trial court or on a later appeal.'" *Williams v. Morgan*, 478 F.3d 1316, 1321 (11th Cir. 2007) (quoting *This That & The Other Gift & Tobacco, Inc. v. Cobb County*, 439 F.3d 1275, 1283 (11th Cir. 2006) (per curiam)) (emphasis added). "Law-of-the-case rules have developed to maintain consistency and avoid reconsideration of matters once decided during the course of a single continuing lawsuit. They do

not apply between separate actions."  18B Charles Alan Wright, et

al., Federal Practice and Procedure § 4478 (2d ed. 2002) (footnote

omitted).  *But cf. Logan v. U.S. Offices of Gov't for Welfare &*

*Soc. Sec. Admin.*, No. Civ. 03-45 JRTJGL, 2003 WL 22077741, at *11

(D. Minn. Aug. 22, 2003) (recognizing "[s]ome courts have suggested

that the doctrine applies to separate actions with similar

circumstances").

Within the portion of the Response ostensibly devoted to

judicial estoppel dwells yet another argument:

> [B]y electing to pursue its common law bad faith claims
> to judgment in the first suit, Coachmen cannot now pursue
> a statutory bad faith claim to judgment.   Section
> 624.155(8) provides "[a]ny person may obtain a judgment
> under either the common-law remedy of bad faith or this
> statutory remedy, but shall not be entitled to a judgment
> under both remedies."  Coachmen has already obtained a
> judgment, albeit an unfavorable one, under the common law
> remedy.

Response at 10 (capitalization omitted) (second alteration in

original).  Royal resorts to no further explanation, and offers no

citation to legislative history or other source of guidance to aid

interpretation of the quoted provision.

According to the Florida Supreme Court, "the statute merely

ensures that a claimant does not obtain a double recovery[.]"

*Macola v. Gov't Employees Ins. Co.*, 953 So. 2d 451, 457 (Fla.

2006).[21]  "This is similar to the doctrine of satisfaction, which

---

[21]    This substantive component of "the doctrine of election of remedies is
not affected by the federal rules of procedure.  In that aspect the doctrine is a
part of the law of remedies rather than of procedural law."  *Olympia*, 908 F.2d at
1371.

allows all consistent remedies to be pursued concurrently even to final adjudication; but the satisfaction of the claim by one remedy puts an end to the other remedies." *Id.* (internal quotation marks omitted).   Under Florida law, "only a full satisfaction of the right asserted will estop the plaintiff from pursuing other consistent remedies." *Macola v. Gov't Employees Ins. Co.*, 410 F.3d 1359, 1364 (11th Cir. 2005) (per curiam) (also parenthetically quoting a Florida case declaring "the doctrine of election does not apply until the injured party has received full satisfaction for his injuries") (internal quotation marks omitted).[22]

In light of the legislation's spirit, as elucidated by the above-cited cases, the Court declines to hold the proposed count is prohibited by section 624.155(8).   Coachmen and GBM received no satisfaction pursuant to either a statutory or common law bad faith theory.   For this reason, there is no threat of a double recovery. Further, while they expressed interest in asserting both, only a common law bad faith count made its way into a pleading.   And although finally adjudicated, the common law claim was dismissed at a preliminary stage of the proceedings.   In the Court's opinion, res judicata operates to prevent Plaintiffs from raising their statutory bad faith claim.   Still, the scenario presented does not

---

[22]     The procedural aspect of election of remedies law, at least within the realm of a single suit, is addressed by Rule 8(e)(2), "which expressly abolish[es] election of remedies." *Olympia*, 908 F.2d at 1371.

conjure the sort of evils meant to be exorcized by a substantive election of remedies restriction.

### 3. Waiver, Laches[23]

Defendant asserts "Coachmen . . . waived its right to assert a statutory bad faith claim by failing to appeal this Court's denial of Coachmen's Motion for Enlargement of Time to File Counterclaim Against Plaintiff Pursuant to § 624.155." Response at 12 (capitalization omitted). As opined elsewhere in this Order, an argument along these lines blurs the distinction between waiver and other doctrines used to preclude claims. Res judicata, barring as it does both claims that were and could have been raised, is likely the better vehicle in which to travel. Defendant's laches argument also fails for the same reasons the Court rejected it in regard to the abuse of process claim.

### 4. Frivolity

"[T]hough this Court did not resolve Coachmen's statutory bad faith claim on the merits," writes Royal, it "did dismiss on the merits Coachmen's common law bad faith claims that asserted the identical theory that Coachmen asserts in its statutory bad faith claim. Coachmen's statutory bad faith claim is therefore frivolous as well." *Id.* at 11 (capitalization and emphasis omitted). In rejecting Defendant's contention collateral estoppel prevents the

---

[23]    See Part II.B. of this Order for discussion of the governing law of waiver and laches.

statutory bad faith claim from being pressed, the Court pointed out that its dismissal of the earlier common law bad faith count focused on the omission of allegations about conduct subsequent to settlement, whereas the statutory count includes them. Therefore, even if the dismissal of the prior claim could loosely be spoken of as based on frivolity, it would not follow that the proposed statutory count must suffer from the same malady.

**5.    Statute of Limitations[24]**

Royal maintains "Florida's statute of limitations for statutory claims, such as statutory bad faith, is . . . four years." *Id.* at 12-13 (citing Fla. Stat. § 95.11(3)(f)). March 15, 2005, four years after the prior suit was filed, was thus the latest possible deadline. *See id.*

The Court agrees the proposed statutory bad faith count runs afoul of section 95.11(3)(f). As the Motion for Enlargement confirmed, Coachmen and GBM were aware of an alleged basis for the claim by October, 2001.

**III. Conclusion**

Consistent with the foregoing, the Motion (Doc. #20) is **GRANTED** only to the following extent:

---

[24]    Part II.B.7. describes the basis for applying the Florida statute of limitations.

1.    The Clerk of the Court is directed to file, forthwith, the Amended Complaint, attached to the Motion.

2.    Only Count I of the Amended Complaint is pending. Proposed Counts II and III have been excluded from the action.

**DONE AND ORDERED** at Jacksonville, Florida, this 25th day of June, 2007.

/s/    Howard T. Snyder
HOWARD T. SNYDER
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record and
     pro se parties, if any